HARMON *et al. v.* STEED *et al.*

(*Circuit Court, D. West Virginia.* February 16, 1892.)

1. TAXATION—DELINQUENT LISTS—RECORDING.
   The mere failure of the county clerk to record the delinquent list filed in his office, as required by Code W. Va. c. 30, § 21, does not affect the validity of a subsequent sale for taxes, since a compliance with the prior requirements of the statute fully answers the purpose of giving notice to the state and the land-owner, and the record is only intended for the purpose of preserving the list.

2. SAME—REDEMPTION.
   In order to redeem land sold for taxes, it is necessary, under the Code of West Virginia, to pay (1) the taxes of the year for which the land was sold, and (2) for the year in which it was sold; and a payment of the former without the latter effects no redemption.

3. SAME—AUDITOR'S CERTIFICATE.
   The certificate of the auditor that the lands have been redeemed does not bind the state, when it fails to show that the taxes for both years have been paid.

4. SAME—DUTY OF REDEMPTION.
   It is the duty of a person seeking to redeem land from taxes to investigate the matter fully, and tender the full amount demanded by the law, if in fact it is not demanded by the officer.

In Equity. Bill by Charles A. Harmon and William W. Flanagan, partners trading as C. H. Harmon & Co., against Thomas Steed, Alexander F. Matthews, William M. Tyree, and Homer A. Holt, to cancel a tax-deed and also a deed executed by the grantee therein. Bill dismissed.

The case was submitted on an agreed statement of facts, in substance as follows:

It is hereby stipulated and agreed between the plaintiffs and defendants in the above-entitled cause, by their respective counsel, that the following facts shall be considered and treated upon the hearing of this cause as proven therein in proper form, that is to say, that on the 1st day of April, 1884, and for more than one year prior thereto, James T. and T. B. Marshall were and had been the owners in fee of the tract of 1,264 acres of land in the bill mentioned; that for said year said land was duly assessed for taxes amounting to $——; that, said tax not being paid within the time required by law, it was

duly returned delinquent for such non-payment to the auditor of the state, and by him certified to the sheriff of Nicholas county to be sold for such delinquent tax, and was by him, said sheriff, on the ——— day of ——— , 1885, duly sold, and at said sale purchased by the state of West Virginia; that afterwards, on the 7th day of May, 1886, said Marshalls paid into the treasury of the state of West Virginia the sum of $14.69, the amount of taxes so assessed for 1884, and interest thereon, and received from the auditor a paper purporting to be a certificate of redemption, which is filed as certificate No. 1 with the answer of the defendants, and is to be read as part of this agreement; that the taxes for said year 1884 and interest aforesaid are all the taxes then or afterwards paid by said Marshalls, or any one for them, for the purpose of redeeming said land from the sale aforesaid; that on the 7th day of January, 1887, P. F. Duffy, the auditor of West Virginia, certified to the clerk of the county court of Nicholas county that the land aforesaid had been redeemed from the sale made to the state on December 22, 1885, and said certificate did not contain any statement of the amount paid, or what taxes were paid to effect such redemption, and such certificate was filed in the clerk's office of said county, as appears by Exhibit C, filed with the bill, which exhibit is to be read as part of this statement of facts; that said lands were assessed with taxes for the year 1885 in the name of the said Marshalls, and in no other name, and said taxes for 1885 not being paid by the said Marshalls, or any one for them, said land was returned delinquent for the non-payment thereof, and, said taxes for 1885 not being afterwards paid, said lands were on the ——— day of ———, 1887, certified by the auditor to the sheriff of Nicholas county for sale for said taxes, and on the ——— day of ———, 1887, the time fixed by law for such sale, said sheriff sold said land to the defendant Thomas Steed, who then and there paid said sheriff the amount of taxes, damages, interest, and costs for which said lands were so certified to be sold, including all commissions, costs of publication, and fee for receipt, and took the proper receipt therefor from said sheriff; that the delinquent list for 1885 of Nicholas county was not returned to the auditor's office till after May 7, 1886; that the sheriff, within the time required by law, filed in the clerk's office of the county court of Nicholas county his list of sales made in the year 1887, pursuant to law, including also the sale of said lands to the said Steed, but the clerk of said court failed to indorse or note thereon the date of such filing; that said lands not being redeemed from said last-mentioned sale within one year next thereafter, or prior to the 18th day of January, 1889, on the day last named the said Steed, having had a report made by the surveyor of said county, as shown by Exhibit K, with the bill to be read herewith, procured from the clerk of said court a deed in due form for said lands, and caused the same to be duly recorded in said office on the same day, which deed is filed as Exhibit H with the bill, and to be read herewith; that the delinquent list of Nicholas county for the year 1885 was duly filed in the clerk's office of said county court, but never recorded in any well-bound book or any other book in said office, and no book for that purpose had ever been kept in said' office, but said list has been on file and preserved in said office since the day the same was filed therein, open to the inspection of all parties desiring to examine the same, and said list showed that said tract of land had been returned delinquent in the name of the said Marshalls for the non-payment of the taxes for the year 1885, and a copy of said delinquent list was duly filed in the office of the auditor of state on the ——— day of ———, 1886; that the plaintiff Harmon paid the Marshalls $1,300 cash for the land in controversy on June 9, 1887, and on that day obtained from said Marshalls the deed filed as Exhibit E with the bill, and to be read herewith; that for the year 1886 said lands were omitted from the land-books, and for the year 1887 said lands were assessed with taxes for that year in the name of the

said Marshalls, and also charged with the back taxes for the year 1886, which taxes for 1886 and 1887 were paid by the plaintiffs; that said lands were duly assessed for taxes in the name of the plaintiffs for the year 1888, who failed to pay the same, whereon said lands were returned delinquent for such non-payment, and sold by the sheriff in November, 1889, at which sale the defendant William M. Tyree became the purchaser for the price of $17.77; that on the ——— day of ——— the plaintiffs paid to the clerk of the county court of said county the amount of said purchase money paid by said Tyree, with interest thereon at the rate of 12 per cent., for the purpose of redemption, the said Tyree being a non-resident of said county, (the original receipt of said clerk, marked "X," to be read as part of this statement of facts;) that for the year 1889 said land was transferred to the said Steed on the land-books, and assessed with taxes in his name, and paid by him October ———, 1889, amounting to $12.79, but said lands also remained on the land-books in the name of the plaintiffs, and were assessed in their name; that on the 4th day of November, 1889, the defendants Holt, Matthews, and Tyree purchased the said lands from the said Steed, for which they agreed to pay the price of $1,264, and at the time the deed was executed paid in cash one-third or one-fourth of the purchase money, and obtained a deed therefor from said Steed on said last-named day, and had the same duly recorded on November 13, 1889, which purchase was *bona fide,* and without any notice or knowledge of any adverse claim except such, if any, as they would be affected with by reason of the records aforesaid; said lands have largely increased in value since the purchase aforesaid of the said Holt, Matthews, and Tyree, by reason of the recent projection of railroads in that vicinity; that after said purchase by Holt, Matthews, and Tyree, and before the bringing of this suit, the plaintiffs caused written notices to be posted on the said lands, warning off trespassers; that, at the date of bringing this suit, neither the plaintiffs nor the defendants had actual possession of said land, but shortly after the bringing of this suit the tenants of the defendants took actual possession thereof, and have held the same since, to the exclusion of the plaintiffs. It is further agreed that all exhibits filed with the bill or answers may be read upon the hearing, subject to all exceptions as to competency or relevancy of the same; that the statements in the bill are true as to the facts of the tender made to and refused by the defendants Holt, Matthews, and Tyree in July, 1890. It is further agreed that the value of the land in controversy exceeds the sum of $5,000. This agreed statement of facts is to apply to this case only as presented in the present suit, and is not to be used against the parties for any other purpose, or in any other litigation concerning the same matter.

*Watts, Ashby & Dabney,* for complainants.
*Brown & Jackson,* for defendants.
Before JACKSON, District Judge.

JACKSON, District Judge. Two questions for the consideration of the court are presented in this case. The first is that the sale was irregular, and under the ruling of this court in the case of *De Forest* v. *Thompson,* 40 Fed. Rep. 375, as well as under numerous decisions in the supreme court of West Virginia, it must be set aside. The irregularity complained of to sustain the position arises from the failure of the clerk "to record in a well-bound book to be kept by him" the delinquent list required by section 21 of chapter 30 of the Code of West Virginia. It is admitted that the sheriff returned the list as required by that section, and that it was in the office at the time of the sale of the land in controversy, but

that it was not recorded as required by the section; and for this reason it is claimed that the sale made by the sheriff should be set aside. So far as the pleadings disclose, this was the only irregularity, if in fact this was one. It will be observed that chapter 30 relates entirely to the collection of taxes, prescribing the mode and manner of the collection; and, upon the failure of the officer to collect the taxes on any realty, it directs him what to do. Among other things, a delinquent list is required to be filed in the clerk's office of the county, which is to be recorded by the clerk. Section 21 of the same chapter provides that the taxes may be paid into the treasury of the state before sale, but nowhere is there to be found in chapter 30 any provision of law for the sale of delinquent lands. Chapter 31 alone provides for the sale of such lands, how and what must be done before a sale is had, as well as what is to be done after sale. The provisions of chapter 30 furnish a guide to the officer in the collection of taxes, while chapter 31 provides the remedies for enforcing the collection of taxes against the property of those who are delinquents. Chapter 30 is more or less directory, while chapter 31 is mandatory in all its provisions, some of which are semi-judicial in their character. When we examine closely what is required by section 21 of chapter 30, and which is relied on to show the irregularities of the tax-sale in this case, we find that the scope of its purpose is to furnish certain information for both the state and owners of lands who are in default for the payment of taxes: *First*, the sheriff, who is charged under the laws of West Virginia with the collection of taxes, is required, when he fails to collect any portion of them charged against the realty, to make a list of the real estate which is delinquent for the non-payment of taxes thereon, stating the year for which the delinquency occurred, a copy of which list is to be posted two weeks at the front door of the court-house of the county before the session of the county court at which it is to be presented; *second*, the sheriff is required "to present three lists of the delinquent lands at or before the session of the county court at which the county levy is next laid." It is not denied that such lists were presented to the court, and that one of them was filed in the clerk's office and a copy sent to the auditor, as required by statute. If the statute had made no other provision, could it be claimed that this list was insufficient to furnish notice of delinquency to any owner of land who exercises ordinary care and diligence in looking after his interest? I think not. All that could be required under the statute was to do just what was necessary to give notice of the condition to the claimant of any lands reported delinquent. The requirement of the statute that the list so furnished was to be recorded, was merely to preserve the list. It was no part of the duty of the officer charged with the collection of the taxes to see that the list was recorded. The failure of the clerk to record it in no wise determined the *status* or condition of the land reported delinquent. The recordation of the list neither aided nor prevented the vigilant claimant in the redemption of his lands after the return of the delinquent list. It is true, before the land could be sold, it must be found delinquent. This the court did when it passed

upon the lists filed by the officer, as required by section 20, c. 30, and entered of record that it was "satisfied of the correctness of the said lists," and directed the original to be filed in the clerk's office and a copy of it sent to the auditor. This provision of the statute may be regarded as essential, and therefore mandatory, while the other provision, requiring the clerk to record the list in a book kept for the purpose, is not essential to determine the delinquency of land for taxes, and a failure to comply with it does not vitiate the sale. In this connection, we must look to the provisions of chapter 31 of the Code of West Virginia to determine what is required to effect a sale of delinquent lands. Sections 4 to 9, inclusive, point out what is to be done to make the sale, which are conditions to be complied with by the officers making it prior to sale. None of the conditions required by the provisions of these sections of this act are shown by the pleadings in this case not to exist, and therefore we must conclude that the statute was complied with up to the time of sale. And such, also, is the case as to the requirements of the statute subsequent to the sale. I conclude, therefore, that all the provisions of the statute necessary to effect a sale had been complied with. This disposes of the first question raised by the pleadings.

The next position taken by the plaintiffs is that, if the sale should be found to be regular, then there was a redemption of the land under the statute, which reinvested the grantor of the plaintiffs with the title, and that the sale in 1887 for the taxes of 1885 was illegal and void. The evidence in this case discloses the fact that the land in controversy was sold for the taxes of 1884 on the 22d day of December, 1885, and, there being no purchaser for it, the sheriff, as required by law, bid it in for the state, where the title would remain unless redeemed in one year or sold again at the next tax-sale of delinquent lands. Upon the 7th day of May, 1886, the Marshalls paid into the treasury of the state the taxes of 1884, amounting to $14.06, and $2.13 interest and office fees. It nowhere appears in the pleadings and evidence that any other amount was paid, or that the taxes for the year 1885, in which it was sold, was paid, as the statute requires. The statute requires two things to be done to secure the redemption: (1) The taxes are required to be paid for the year in which the land was sold; (2) the taxes for the year or years for which it was sold. It is conceded that the taxes for the year in which it was sold were not paid, and that afterwards, in the year 1887, they were sold for the delinquent taxes of 1885, and purchased by Steed. It is also shown that the auditor, on the 7th day of January, 1887, certified the land for re-entry upon the land-book, and that it had been redeemed in the name of the Marshalls, the former owners, and that, in pursuance of said certificate, it was re-entered on the land-books for 1887, and charged with the back taxes for the year 1886. It will, however, be observed that this redemption does not embrace the taxes of 1885, which do not appear to have ever been paid. To meet this difficulty, raised by the defendants, the plaintiffs insist that the act of the auditor is the act of the state, and therefore the state must be bound, and, inasmuch as the auditor has certified the redemption, it was ille-

gally and improperly sold for the taxes of 1885. I will hereafter allude to this position. In the view I take of this case, it is unnecessary to determine as to how far the action of the auditor might or could bind the state. I confess to some surprise in not finding in the briefs of counsel a discussion of that part of section 16, c. 31, of the statute, that I think disposes of this question. To my mind it is clear that no redemption, as required by the statute, was made in this case, and the certificate of the auditor shows it. There never was any redemption of the land for the taxes of 1885, for which it was sold in 1887. The last clause of the sixteenth section of chapter 31 provides that "land may be sold for any unpaid taxes for any year previous to that in which it was sold as aforesaid, and subsequent to the year or years for the taxes of which it was sold, or for that year, as if such former sale and redemption had not been made." The certificate of the auditor is relied on to show that the land was redeemed, and the title reinvested in the "previous owner." But does it show the payment into the treasury of the taxes of 1885, as plainly required by section 33 of chapter 31 of the Code? The answer to that question must settle the fact of redemption, and, as there was no such payment, the last clause of section 16, c. 31, which expressly provides for the sale of land when the taxes have not been paid for the year in which land was sold, was not complied with, and I must hold that the land was not redeemed after the sale of 1887, and that the purchaser, Steed, under that sale, became invested with the legal title, which is a valid title against the previous owner, or those claiming under him.

I have not thus far referred to the obvious duty of the claimant, when he attempted to make a redemption of his lands under the statute, to satisfy himself whether he had done all the law required him to do to effect the redemption. There was a plain and manifest duty on his part to pay, not only the past-due taxes, for which the delinquency occurred, but to pay also the taxes for the year in which the sale occurred. He should have fully investigated the matter as to the amount required, and tendered the full amount demanded by the law, if in fact it was not demanded by the officer. And here I will briefly notice the position of the counsel for the plaintiff, that the act of the officer was the act of the state. Ordinarily the state speaks through its officers, and their legitimate acts bind the state. Their acts, however, must be under the law, and in accordance with it. Certainly the state cannot be bound by an officer who neglects to perform a duty required by the express terms of the statute. He cannot execute the law in part, and in part disregard it, especially when rights of other parties intervene. I do not think that either the law of agency or the doctrine of estoppel properly arises in this case. The only question is, did the party who undertook to redeem his lands comply with the statute? I think he did not.

It is unnecessary to notice in this controversy the sale of the land for taxes in the name of the Marshalls in 1889, as they had sold the land and conveyed the same to Harmon by a deed which had been admitted to record in the proper county January 31, 1888, and which in law oper-

ated to transfer the title to Harmon, in whose name the lands should have been assessed to protect his title. It follows from what I have said that the bill must be dismissed.